Thank you. Good morning. May it please the court. My name is Mario Valencia. I represent the appellant in this case, Saul Beltran, and I would like to reserve if possible two minutes for rebuttal. The case, I think, is pretty straightforward. The issue is whether the district court erred in determining that Mr. Beltran's prior conviction in Nevada for attempted burglary is a crime of violence. Mr. Beltran was charged with illegally reentering the country after having been removed once. And the question was whether his conviction for attempted burglary in Nevada should have counted as a violent crime. The effect was that his base offense level under the guidelines was eight. But if the attempted burglary in Nevada counts as a violent crime, it increased by 16 levels. Do I understand correctly that the government concedes that basically that the crime in question did not fit within the categorical analysis nor the modified categorical analysis? Is that correct? Well, yes. It's my understanding that they have in their supplemental letter brief conceded that the case should be remanded, that the district court did make a mistake in determining that under the modified categorical approach as well, it was not a crime of violence. There's a difference in the way they're – oh, go ahead. So the – what we would do according to the government would be we would affirm the conviction, vacate the sentence, and send back for resentencing. And I take it because you haven't stood up and said, sounds fine to me, that you have an objection. Well, the only – there's a difference into what – why we think it should be sent down or how it should be sent down. And that's – the difference is is that the government believes that sending it back down, one, it should be sent back down on an open record, and two, it should be sent back down so that the district court can again engage in the modified categorical approach to determine whether or not, in fact, Mr. Beltran forcibly or unlawfully entered a residence so that it fits the generic definition of what a burglary is. Oh, wait a minute. We would disagree with that. So you're saying the government wants to go back to the categorical analysis? Or you're saying they want to go back on an open record so they can try to supplement the documentation provided under the modified categorical analysis? The latter.   Absolutely. So what – I mean, what we're trying to do is find the truth here. Right. It's not a catch the constable kind of a deal. Yeah. So what's the objection to sending this back on an open record? Well, the – again, the objection would be twofold. First, I'll attack it from that it makes no sense to go back and even engage in the modified categorical approach because under Aguila Montes, even if you sent it back down and the court tried to engage in the modified categorical approach, it wouldn't make any difference at all if Mr. Beltran had forcibly entered the residence. Because in Nevada, it's a missing element statute. There is no requirement that there be unlawful entry. In Aguila Montes – That's why it's not a – it doesn't fit the categorical analysis. Exactly. But it doesn't – that doesn't address the issue of the modified categorical analysis, does it? Well, it does under Aguila Montes because Aguila Montes says you then determine whether or not, if even under a missing element statute, you engage in that category – modified categorical approach. But you're looking to see whether the unlawful entry was necessary to the conviction. Well, wait a minute. With respect, I think you may be confused there. Navarro Lopez said if the statute is missing an element, you can't ever get there. Correct. That was overturned in Aguila Montes. I was on that panel. Correct. And now you seem to be objecting to our sending it back on an open record, which would give the government an opportunity, if they have it, to come forward with documentation that satisfies Aguila Montes and the modified categorical analysis. But what I seem to be – I think I'm hearing you say is even if you go back, you can never get there under modified categorical analysis if you're missing an element. And that seems to go back to Navarro Lopez, which has been overruled on that point. Is it not? No. And the reason is – I'll use the example that Judge Bybee used of the missing element. He used his hypothetical of an aggravated assault statute that just says all that's required is harmful contact. It's missing the element of a gun. So let's say the generic definition was harmful contact and a gun, but you have in Nevada where all you're required to have is the harmful contact. But, in fact, the state's theory, and what they indict the person for, is that the harmful contact was with the use of a gun. And so the only way you could have the harmful contact was with the use of a gun. Well, then even though it's a missing element statute, you do go back, engage in a modified categorical approach to determine whether or not a gun was used. If a gun was used, you can get him under the modified categorical approach, even though there's a missing element. Right. In Nevada, the statute does not require unlawful entry. Well, that was the same problem with Aguilamontes, which dealt with the California burglary statute. Correct. Which makes the unlawful entry concept. Now, what's the difference between – I mean, I admit one's unlawful entry, the other's a gun. But what's the difference other than that? And there's two. In Nevada, all that's required – and I understand that – is an intent to enter with – to commit a crime. In this case, the theory that they charged him with would not require in any way, shape, or form unlawful or forcible entry. They could have charged him simply with entering that apartment with the intent to commit a battery by swinging the wrench. It wasn't necessary. He could have been invited into their apartment and swung the wrench, and they could get him for burglary. Okay. But then what have you got to lose? I mean, the reality is, based on your theory, even with an open record, they can never convict him under the modified categorical analysis. Well, that's true. There is no prejudice to send him back down. I was just trying to point out that it wouldn't be necessary to send him back down to engage in the modified categorical approach because the State's theory is that the intent he entered with was to commit a battery. So if he entered with that intent, it's not necessary for him to have entered forcibly or unlawfully. Another example would be, let's say instead the theory had been that my guy was caught in a grocery store after hours. Well, that's different. Then the unlawful entry would be required because that's their theory. It's not that he was in there to assault somebody or anything else. The store is closed. He's caught inside. What is he doing inside? Then it would be necessary. But in this case, all Mr. Montes – I mean, sorry, Mr. Beltran would have gone in to do was to try and object to the fact that he had some sort of intent to swing a wrench or that. He could literally have just pled to the fact that he was in the apartment. Maybe he worked for them. Maybe he was a friend. Maybe he was in their house and got mad because he had beat up his friend and then swung a wrench. But he would have no reason to have fought against forceful entry. Well, on resentencing, I'm sure your persuasive argument, the district judge will listen to that and be overwhelmed with the logic of it all. It seems to me that if you stretched it, you could go exactly the opposite way. That is, the district judge was trying to protect himself and said, this is a fair and reasonable sentence, regardless of the guidelines. So it looked like to me he was trying to make it bulletproof. So whether it's 8 or 16 doesn't matter, because whatever the guidelines are, it's okay. Now, I don't accept that. But it's certainly the same type of reasoning. What we have to do is to have the guideline, and then we have to have the district judge make a new assessment. So I don't see how we can possibly not do that. I mean, it would be nice if I could give the sentence, but I haven't done that for 40 years, and I'm not very good at guideline sentencing. So why wouldn't we send it back for the judge to set the proper guideline and then to provide a new sentence with his reasoning? No, just to be clear, I'm not objecting to sending it back down so he can do a proper guideline calculation. I agree with that. All my thing is, is this could never count as an enhancement, as a crime of violence. And so to send it back down for him to do the appropriate guideline without the 16 level would be the correct thing to do. The other thing, real quick, because I only have a minute left, so I just want to be sure. The reason not to send it back down open record is that they point the blame at the defendant. Well, it's their burden to come and clearly and unequivocally show it under the modified categorical approach. They knew it was the modified categorical approach. They were supposed to come with the records. We simply objected to that and said, no, it doesn't come in under the modified categorical approach. They cite a 2007 case showing that the documents they had weren't sufficient. So it was their burden. They should have a second bite at the apple. And if I can, I'll reserve the last 30 seconds. Thank you. Very good. We'll hear from the government. Good morning, and may it please the Court. Robert Ellman from the United States. I think the question the Court seems most concerned with is whether Mr. Beltran's attempted burglary conviction in Nevada qualifies as a crime of violence in the wake of Aguila Montes. And unfortunately, on the record we have, the best answer I can give to you is probably. And I say that because when you look at the charging instrument in that prior, it states that he entered unlawfully and forcibly with intent to commit assault. It certainly appears to be a generic burglary. And under Aguila Montes, the modified categorical approach applies. The only potential wrinkle left is whether in Nevada unlawful doesn't really mean unlawful, as is the case in California. But that's not so, as we've pointed out in our letter brief. I gather the government is not pursuing its harmless error approach. Is that correct? No, it's not, Your Honor. Well, basically the only issue before us today is whether this goes back on an open record for resentencing. Is that right? Correct. Okay. And what's your best argument as to why it should go back on an open record? Well, just to be clear, we don't know whether Mr. Beltran pled guilty as charged. If he did, we would have a generic burglary. The reason that the error is harmless is because the sentence would be the same regardless. And the reason it should go back on an open record rather than a closed one is that the parties and the court erroneously concluded that this was subject to the modified categorical analysis and that the documents before the court were sufficient to establish that. They were not, but there was no objection to the sufficiency of the documents. The defendant's position below was that the modified categorical approach did not apply at all. That was the only objection. Wait a minute. What I'm seeing here, and I don't know where it is in the ER, but it says 21 in the page stamp at the bottom. There's a discussion of agitamontes before the district court at sentencing. Who raised that? Was that the defense or was that the government? I don't recall, Your Honor, who raised it. It was squarely before the court in that it occupies a great deal of discussion at sentencing. It does here. Let me summarize then. Ask Mr. Gish to state the objection and I'll ask for a response. He, Mr. Gish, I guess, cites agitamontes, 9th Circuit 2009. The prior conviction is for a crime of violence if, of course, it compares element by element with the offense listed in the guidelines for the type of offense for enhancement. So the district court clearly was aware of agitamontes. Correct. They talked about it. There was argument. So I guess my point is who raised it? It was Mr. Gish. Is that? Mr. Gish was defense counsel. Okay. And my reading of this would be that he raised it. Okay. So if Mr. Gish raised it, this has kind of been argued before the district court. The district court had an impression about what it means and yet went ahead and sentenced Mr. Beltran under the modified categorical analysis nonetheless. Correct. How did Chief Judge Jones get up to the 16 levels? Well, the government and the probation department both agreed that the enhancement applied because they both incorrectly believed that on the documents before the court this qualified under modified categorical. Was that in the pre-sentence report? Yes, it is. Because Judge Jones is a very experienced judge. And he was one of my former law clerks. So I'm taking special care to see where I went astray in my training program. So he was following along the pre-sentence report, which you now admit was an error. And he's a former bankruptcy judge, too, so that probably helped. So we need to let him go back now, as you see it, to be able to see what the actuality is. The thing that bothers me is it seems to me he's saying, regardless, I think this is a — whether it's 8 or 16, this appears to be a reasonable sentence. Well, I'd like to address that squarely, if I may, Your Honor, because the answer to that question determines whether this case has to go back or not. Under Munoz-Camarena, the Court expressed its concern that, in some instances, a district court might attempt to insulate its sentence from any type of remand merely by stating that it's the sentence it would impose regardless of guidelines calculations. And the Court rejected that and said that's insufficient. But we have a great deal more than that here. And I'd like to point you primarily to page 30 of the excerpts of record, after discussing the fact that Aguila-Vontes was up on en banc at the time. The panel decision had been withdrawn, but the en banc decision had not yet been issued. So the Court and the parties did not know whether the Nevada burglary would qualify under the old analysis or not. It would depend on the en banc decision. So you're saying that the reference to Aguila-Vontes, the OCA that I made a few minutes ago, referred to the earlier merits panel decision before it was vacated and went en banc? Is that what you're saying? After it was vacated, Your Honor. There's a discussion about that specifically because the Court is aware that the panel decision had been vacated because en banc review had been granted. So from what you're saying is that Judge Jones was not aware of the results in our en banc case. Is that correct? Yes. No one was. It hadn't been issued yet. But the sentence I want to point the Court to is on lines 14 and 15 of page 30, where Judge Jones says, quote, I'm going to rule against you, and I'm talking about the 16-level enhancement, but I'm ruling alternatively. And then if you look at the discussion which begins on line 20, it's because Aguila-Vontes was pending en banc. The Court didn't know whether this would qualify for a 16-level enhancement or not at that point. And then he goes on to state, and now I'm referring to page 40 of the excerpts, that he could not go below 48 months in any event because of Mr. Beltran's extensive criminal history. And at pages 19 and 20, Judge Jones actually, one by one, goes through seven prior convictions. And the PSR actually contains 15 prior convictions. And he's talking about the convictions collectively, not merely this Nevada burglary. So, and I had looked at this before in terms of just a statement that he wasn't going to go back, which, of course, doesn't control. But what you're saying is that under the analysis of 3553A, that he's already said, look, either way you cut this, based upon 3553A, he's going to get this no matter what. And that's an alternative basis. You're saying we can uphold it on any basis, and that's what you're arguing, right? So he was making, trying to make it bulletproof regardless of what the en banc court did. Your Honor, the government was trying to make it bulletproof on page 47. I'll admit that, but I don't think Judge Jones was. I think Judge Jones made very clear that he was ruling alternatively. And that's on page 47? 47. 47. And Judge Jones says there, after doing the analysis I've just discussed, and after announcing that he would rule alternatively on the question of the prior violent conviction, he says, regardless whether higher or lower by eight levels, this is the sentence I would be imposing. And as I say, the rationale for that was the extensive criminal history, not the Nevada burden. I understand. I read that. I was very intrigued by it. And it seemed to me that's what he was doing, was solving the problem regardless of how the en banc court comes out. The only question is, can you do that when our courts have been so strong that you have to start with the guidelines before you start making modifications? He's saying I've made up my mind. If they come out the other way in the en banc court, I've made up my mind. I would still sentence the same sentence. And I'm not sure you can do that with whether that's a procedural mistake that we say violates before you get to the substantive problem. Is there a case that tells us or a case that comes close to telling us that a district judge can do this? I would point you to Calderon, Your Honor, which is cited in our briefing, 569 F3rd at 1008 and 1009. In the wake of Munoz-Camarena, it's clear that a court has to do more than merely state that this would be the sentence regardless of miscalculation. But the inquiry now is whether the court actually considered what the sentence would be with and without the disputed enhancement. And on this record, that's exactly what Judge Jones did. It's much more than a mere statement. So you're saying, again, that he sentenced in the alternative. Yes, Your Honor. And that we can discard the enhancement that was based upon modified categorical analysis and go to his analysis under 3553A and say we can uphold it on any basis. We don't need to get to the Aguilar-Montes problem. I would agree with that. And I would only cite you additionally to footnote 5 in the Munoz-Camarena opinion because that lists among an unexhaustive list of ways in which guideline calculation errors can be harmless a scenario in which a judge does what Judge Jones did here. Okay. Thank you. Thank you. We'll give you a full minute. Wow. That's okay. Addressing what was just said, this Court has never sent back a case when a judge said that that's what they would do regardless of what the guideline calculation was when that guideline calculation was incorrectly done. That was always considered harmful error, prejudicial. Procedural error. Procedural error, exactly. And you say it doesn't make the procedural error so we don't even get to the substantive error whether the sentence is too long. Right. Once you've committed that procedural error where it changes the guideline range, then that's always harmful. It's never harmless. And this Court has never sent it back down. He assumes that the guideline range is X, which it is now, and says even under that Why would we send it back down for him to do the same thing again? Well, two things. First, the reason you do it is the same reason stated in United States v. Munoz, the most recent opinion, which I sent a 28-J letter on, and that is it's procedural error and that's significant and you can't do it because that's the guideline range they have to keep in mind. And that's important for the second reason you would in this case. I respectfully disagree that what Judge Jones was saying here is that he wanted to impose a 48-month sentence because that's what he thought this guy deserved because he was such a bad criminal. It's very clear from the record that he's just the opposite. Judge Jones, and you may know this or I've had a little bit of experience with him, has a soft spot for situations like this where you're talking about an immigration crime. And it's very clear in this case that what happens is you start with a guideline range of 77 to 96 months. He thought that was way too much. So he departs downward by I don't know how many levels because of cultural assimilation. Then he departs another 13 months to 48 months. So it's an outside the guideline range by a significant amount and says 48 months is as low as I could go and I would give you even less, but I can't because you have all these other crimes. But if he had had in mind the correct guideline range, which was like 23 to 30 months, then he would have been less than 48 months regardless of his criminal history. That was the correct guideline range. Except that he's saying I would go outside that lower range to 48 because 48 is right. That's what he said. No, he said but he's going downward and he's saying I would even give you less. He says that multiple times in the record. I would give you significantly less, but for the fact that you have such an extensive criminal history. So you want another shot at Judge Jones. I think if we have another shot at Judge Jones and he knows the sentencing range is 23 to 30 months, you're not going to see him go upwards to 48 months. And even though he said he would. Absolutely. And it doesn't matter. I'll take you to lunch. Put his face in the fire and see if he'll really do it. Okay. So on that basis, why, you'd win out if we say we're going to go back on an open record. You want your shot at Judge Jones. I do want my shot, but not an open record. But I'll take whatever you give me. That's nice of you to do that. Okay. The case of U.S. v. Beltran is submitted.
judges: Wallace, Noonan, Smith